UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED CORTLAND PROCTOR, *et. al.*,          Case No. 07-12414

          Plaintiffs,          Paul D. Borman

vs.          United States District Judge

L. APPLEGATE, *et al.*,          Michael Hluchaniuk
          United States Magistrate Judge

          Defendants.

_____/

**AMENDED REPORT AND RECOMMENDATION
DEFENDANTS' MOTIONS TO DISMISS (Dkt. 132, 147, 165)
<u>AND SEVERANCE OF PARTIES AND CLAIMS</u>**

## I.    PROCEDURAL HISTORY

The complaint in this matter was filed June 5, 2007 by five plaintiffs, four

of whom are currently in the custody of the Michigan Department of Corrections.

(Dkt. 1). The four prisoner-plaintiffs were granted *in forma pauperis* status and

the fifth plaintiff was ordered to submit his full portion of the filing fee or file an

affidavit of indigency. (Dkt. 11). Plaintiffs seek damages from dozens of MDOC

employees based on allegations that they were denied certain rights under the

United States Constitution. Plaintiffs' claims include, *inter alia*, improper

retaliation for filing grievances, confiscation of legal materials, interference with

legal mail, interference with prisoners giving and receiving legal advice, denial of

access to the courts, and denial of access to adequate medical care. *Id.* The facilities at which plaintiffs allege they were mistreated are located in the Eastern and Western Districts of Michigan and include: the Gus Harrison Correctional Facility (ARF) (Eastern District); the Marquette Branch Prison (MBP) (Western District); the Bellamy Creek Correctional Facility (IBC) (Western District); EC Brooks Correctional Facility (LRF) (Western District); and the Baraga Maximum Correctional Facility (AMF) (Western District). (Dkt. 1, ¶¶ 5, 7-9).

On July 24, 2007, District Judge Paul D. Borman entered an order referring this matter to Magistrate Judge R. Steven Whalen for all pretrial purposes. (Dkt. 15). On January 14, 2008, this matter was reassigned from Magistrate Judge Whalen to the undersigned. (Dkt. 31). Defendants filed two motions to dismiss, both on similar grounds, but each motion was filed by groups of defendants as they were served in this matter. (Dkt. 132, 147). Plaintiffs filed responses to both motions to dismiss. (Dkt. 157, 158). The undersigned issued a report and recommendation on these two motions to dismiss on March 10, 2009. (Dkt. 181). On March 30, 2009, Judge Borman remanded the matter back to the undersigned to prepare a "Box Score" in Section IV of the recommendation, summarizing specifically the recommendations of grant or denial as to each claim as to each defendant. (Dkt. 185). In the interests of efficiency, the undersigned will also

address the third motion to dismiss filed by defendant Doering on January 7, 2009, to which plaintiffs responded on January 29, 2009. (Dkt. 165, 172).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions to dismiss be **DENIED** in part and granted in part and that all plaintiffs' remaining claims be **SEVERED** based on misjoinder, as described below.

## II.    STATEMENT OF FACTS

Plaintiff Proctor brings claims against more than 40 defendants who work at four different correctional facilities and at the MDOC in Lansing, Michigan. (Dkt. 1). These defendants and the facilities at which they work are as follows: Sands (ARF); Hill (ARF); Jefferson (ARF); Letson (ARF); Bell (ARF); Andison (ARF); Applegate (ARF); Faulkenstein (MDOC Lansing); Stapleton (MDOC Lansing); Williams (ARF); Armstrong (MDOC Lansing); Pass (ARF); Klee (ARF); Smetka (ARF); Watson (ARF); Eaton (ARF); Payne (ARF); Caruso (MDOC Lansing); Hemry (ARF); Niedermeyer (ARF); Schooley (MDOC Lansing); Dulworth (ARF); Lajewski-Pearson (MBP); Hofbauer (MBP); Ellerby (MBP); York (MBP); Webb (ARF); Trethway (MBP); Pokely (MBP); Napel (MBP); Mohrman (MDOC Lansing), Niemi (MBP); Farley (LRF); Mullen (MBP); Tatlio (MBP); Alexander (MBP); Weisinger (MBP); Niemisto (MBP); Perry (IBC); Hosely (IBC); and

McKee (IBC).  (Dkt. 1)

Plaintiff Hurd brings claims against nine defendants who work at three different correctional facilities and the MDOC in Lansing, Michigan.  These defendants and the facilities at which they work are as follows:  Bell (ARF); Trevino (ARF); York (MBP); Luoma (AMF); Weisinger (MBP); Hofbauer (MBP); Caruso (MDOC Lansing); Applegate (ARF); and Sands (ARF).  (Dkt. 1).

Plaintiff Jividen brings claims against four defendants who work at one correctional facility and the MDOC in Lansing, Michigan.  These defendants and the facilities are as follows:  Lajewski-Pearson (MBP); Mohrman (MDOC Lansing); Hofbauer (MBP); and Armstrong (MDOC Lansing).  (Dkt. 1).

Plaintiff Petersen brings claims against over 30 defendants who work at two different correctional facilities and at the MDOC in Lansing, Michigan.  (Dkt. 1). These defendants and the facilities at which they work are as follows: Krauss (ARF); Wilson (ARF); Berry (ARF); Andison (ARF); Watson (ARF); Armstrong (MDOC Lansing); Eaton (ARF); Gibbs (ARF); Pass (ARF); Monahan (ARF); Gray (ARF); Williams (ARF); Bolan (ARF); Doering (ARF); Ingram (ARF); Pfeiffer (ARF); Faulkenstein (MDOC Lansing); Soedlecki (ARF); Caldwell (ARF); Hemry (ARF); Burtovoy (ARF); Stapleton (MDOC Lansing); Smetka (ARF); Niedermeyer (ARF); Kiser (ARF); Applegate (ARF); Bell (ARF);

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

Luetzow (ARF); Jondreau (AMF); Luoma (AMF); Pittsley (AMF); Sweeney
(AMF); Perttu (AMF); Petaja (AMF); and Schooley (MDOC Lansing).

Plaintiff Chandler brings claims against more than 30 defendants who work
at two different correctional facilities and at the MDOC in Lansing, Michigan.
(Dkt. 1). These defendants and the facilities at which they work are as follows:
Williams (ARF); Pass (ARF); Watson (ARF); Evers (ARF); Armstrong (MDOC
Lansing); Gibbs (ARF); Monahan (ARF); Sands (ARF); Eaton (ARF); Olin
(ARF); Applegate (ARF); Andison (ARF); Hemry (ARF); Faulkenstein (MDOC
Lansing); LaLonde (AMF); Dostaler (AMF); Oidiway (AMF); Kotila (AMF); Hill
(ARF); Nannberg (AMF); Vain (AMF); Pejata (AMF); Horton (AMF); Smith
(AMF); Luoma (AMF); Edlund (MDOC Lansing); Weise (AMF); Luetzow
(ARF); Ezrow (AMF); Butzin (AMF); LaPlante (AMF); and Richards (AMF).

## III.   DISCUSSION

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first
comply with Rule 8(a)(2), which requires "'a short and plain statement of the
claim showing that the pleader is entitled to relief,' in order to 'give the defendant
fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell
Atlantic Corp. v. Twombly*, 500 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting,

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

*Conley v. Gibson*, 355 U.S. 41, 47 (1957).  A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502, F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly*, 127 S.Ct. at 1964-65 (citations and quotation marks omitted).

And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*, quoting, *Twombly*, 127 S.Ct. at 1965 (internal citation and quotation marks omitted); *see also, League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

The Sixth Circuit recently recognized that in *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint;

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

and *Twombly* itself suggests that its holding may be limited to cases likely to

produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford*

*Motor Co.*, 532 F.3d 496, 503 n. 6 (6th Cir. 2008) (internal citations and quotation

marks omitted).  The Sixth Circuit applied a more stringent pleading standard in

*U.S. v. Ford* because a fraud claim was involved, which requires the application of

the heightened pleading standard set forth in Rule 9(b), rather than the more

liberal pleading standard found in Rule 8(a)(2).  Such is not the case here.  Thus,

when applying *Twombly*, the Court must still read plaintiff's *pro se* complaint

indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton*

*v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 127 S.Ct. at 2200 (The

Court of Appeals improperly departed "from the liberal pleading standards set

forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at

issue.).

    B.    <u>Statute of Limitations</u>

       Defendants' motions to dismiss are primarily based on the statute of

limitations.  A defendant raising the statute of limitations as an affirmative defense

has the burden of proving that the action is time-barred.  *Campbell v. Grand Trunk*

*W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).  To prevail on this affirmative

defense, defendants must prove both that: (1) the statute of limitations has run; and (2) that no genuine issue of material fact exists as to when plaintiff's cause of action accrued. *Id.* If defendants meet this burden, the burden then shifts to plaintiff to establish an exception to the statute of limitations. *Id.* The nonmoving party may not rest on the mere allegations in the pleadings. *Id.* However, if defendants fail to meet their burden of proof, plaintiff has no obligation to proffer any additional evidence to rebut the statute of limitations defense. *Fonseca v. CONRAIL*, 246 F.3d 585, 590-91 (6th Cir. 2001).

Because § 1983 does not contain its own statute of limitations, courts must look to state law to determine the relevant limitations period. *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). Michigan provides for a three-year limitations period for federal civil rights actions. Plaintiff's § 1983 claims are governed by the three-year Michigan personal injury statute of limitations. *See Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003); *Wolfe v. Perry*, 412 F.3d 707 (6th Cir. 2005). In determining when the limitations period began, courts must refer to federal law. *Roberson*, 399 F.3d 794. The Sixth Circuit has held that, under federal law, the statute of limitations begins to run "'when the plaintiff knows or has reason to know of the injury which is the basis of [her] action. A plaintiff has reason to know of [her] injury when [she] should have

discovered it through the exercise of reasonable diligence.'" *Id.*, quoting, *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir.1984)).  The Sixth Circuit has held that the statute of limitations applicable to a prisoner-initiated § 1983 suit is tolled while the plaintiff exhausts available state remedies.  *Waters v. Evans*, 105 Fed.Appx. 827, 829 (6th Cir. 2004); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). The statute of limitations is tolled because a prisoner cannot bring suit in federal court until the administrative remedies at the facility (the standard MDOC grievance procedure) are exhausted and it would be unfair to penalize them for not bringing their claims during the limitations period, while administrative proceedings were still ongoing.  *See Brown*, 209 F.3d at 596.  Thus, the statute of limitations begins to run once the plaintiff becomes aware of the injury, but is tolled while the prisoner seeks redress through administrative proceedings at the prison.  Here, defendants have brought a motion to dismiss and have not sought to prove when the limitations period for each claim began to run and whether or for how long any limitations period was tolled.  Further, it is not plainly evident from the complaint.  *Stiles v. Porter Paint Co.*, 75 F.R.D. 617 (E.D. Tenn. 1976) (In order to support dismissal for failure to comply with statute of limitations, bar of such statute must be clearly apparent from face of complaint, and motion to dismiss based upon statute of limitations will be denied if any issues of fact are

involved.).  Based on the foregoing, the undersigned suggests that defendants have not met their burden of proving that any of plaintiffs' claims are barred by the statute of limitations and their motion to dismiss in this regard should be denied without prejudice.

      C.    Qualified Immunity

Defendants seek dismissal based on qualified immunity, which is an affirmative defense.  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory.  *Pearson v. Callahan*, — U.S. —, 2009 WL 128768, at *9 (U.S. 2009), overruling, in part, *Saucier v. Katz*, 533 U.S. 194 (2001).  When "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," the "jury becomes the final arbiter of [a] claim of immunity."  *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989); *Bouggess v. Mattingly*, 482 F.3d 886, 888 (6th Cir. 2007).  "Dismissals on the basis of qualified immunity are generally made pursuant Fed.R.Civ.P. 56 summary judgment motions, not 12(b)(6) sufficiency of pleadings motions."  *Grose v. Caruso*, 284 Fed.Appx. 279, 283 (6th Cir. 2008).  In this case, defendants have made only conclusory arguments regarding hundreds of

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

claims made by plaintiffs via a motion to dismiss, not a motion for summary judgment.  It is impossible, based solely on defendants' allegations and plaintiffs' complaint, for the Court to determine whether defendants have qualified immunity for any and all of plaintiffs' claims.

Notably, as a general rule, a claimant cannot defeat qualified immunity merely by leveling "bare allegations of malice" against government officials. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 831 n. 16 (6th Cir. 2007). However, "an essential element of some constitutional claims is a charge that the defendant's conduct was improperly motivated." *Id.*, quoting, *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). For example, "[w]here improper motivation constitutes an element of the claim-as in the case of Plaintiffs' First Amendment retaliation claims-and the claimant has shown all other elements, a question of fact remains as to the official's intent, thereby precluding summary judgment on the basis of qualified immunity." *Id.* Given that most of plaintiffs' claims involve such intent, defendants' motion to dismiss in this regard is improper and premature and should be denied without prejudice.

D. Injunctive and Declaratory Relief

_____Neither the absolute nor qualified immunities extend to suits for injunctive or declaratory relief under § 1983. *See Section 1983 Litig. Claims & Defenses*

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

§ 9.01, citing, *County of Sacramento v. Lewis*, 523 U.S. 833, 840 n. 4 (1998);

*Mumford v. Zieba*, 4 F.3d 429 (6th Cir. 1993).  "Claims for injunctive and

declaratory relief seek to bring about changes in governmental operations, and

therefore, must be asserted in an official capacity action or, when permitted, in an

action against a governmental entity."  *Id.*

Here, plaintiffs have sued defendants in their individual and official

capacities, however, the undersigned suggests that their claims for injunctive and

declaratory relief are moot.  When a plaintiff is no longer incarcerated in the

institution where the alleged violations occurred, injunctive relief is no longer

needed and therefore must be denied as moot.  *Copenhaver v. James*, 2008 WL

162547, *3 (E.D. Mich. 2008)*, citing, *Washington v. James*, 782 F.2d 1134, 1137

(2d Cir. 1986) (noting that prisoner cannot maintain § 1983 action for injunctive

relief when he is no longer incarcerated where alleged violations occurred).  When

a prisoner sues for equitable relief and, by virtue of a transfer to another prison, is

no longer under the control or custody of the defendants, his claims for injunctive

and declaratory relief are moot.  *Kime v. Jones*, 2007 WL 586793, *3 (W.D. Mich.

2007)*, citing, *Mowatt v. Brown*, 902 F.2d 34, 1990 WL 59896 (6th Cir. 1990);

*Tate v. Brown*, 902 F.2d 35, 1990 WL 58403 (6th Cir.1990); *Howard v. Heffron*,

884 F.2d 1392, 1989 WL 107732 (6th Cir. 1989); *Williams v. Ellington*, 936 F.2d

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

881 (6th Cir. 1991)).  "Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the result of the challenged official conduct."  *Kime*, at *3, citing, *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *see also* *Brieger v. Teletronics, Inc.*, 816 F.2d 678, 1987 WL 37131 (6th Cir. 1987) (injunctive relief generally inappropriate where remedy at law, i.e., money damages, is available).  Indeed, prior "exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again." *Kime*, at *3 (collecting cases).  Finally, a court should assume that, "absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally." *Id*.

Plaintiff Hurd is no longer incarcerated.  (Dkt. 1, ¶ 6).  Plaintiff Proctor is housed at the Southern Michigan Correctional Facility (JMF).  (Dkt. 1, ¶ 5). Plaintiff Jividen is housed at the E.C. Brooks Correctional Facility (LRF).  (Dkt. 1, ¶ 7).  Plaintiff Peterson is housed at the Richard Handlon Correctional Facility (MTU).  (Dkt. 1, ¶ 8).  None of the actions of which plaintiffs complain, save one, occurred at any of the facilities at which the incarcerated plaintiffs are currently

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

housed.  Further, none of the defendants, save one,[1] are employed by the

correctional facilities at which incarcerated plaintiffs are currently housed.  Based

on the legal principles set forth above, plaintiffs are not entitled to any injunctive

or declaratory relief because their transfers to other facilities have rendered those

claims moot.  Thus, the undersigned suggests that plaintiffs' claims for injunctive

and declaratory relief be dismissed.

     E.     <u>Misconduct Proceedings and Tickets</u>

The Supreme Court has held that a claim for declaratory relief and monetary

damages that necessarily implies the invalidity of the punishment imposed, is not

cognizable under § 1983 until the conviction has been overturned. *Edwards v.*

*Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the

part of the decisionmaker in a misconduct hearing).  The Court relied on *Heck v.*

*Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover

damages for allegedly unconstitutional conviction or imprisonment, *or for other*

*harm caused by actions whose unlawfulness would render a conviction or*

*sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has

---

[1] The exception is defendant J. Farley, who is alleged to be an inspector at LRF, and only plaintiff Jividen is housed at that facility.  (Dkt. 1, ¶¶ 34, 165, 175). Plaintiff Jividen alleges that defendant Farley confiscated his legal documents and prevented him from reviewing legal materials from plaintiff Proctor.

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).  As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74 (2005).  Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983.  *Id.*; *See also Thomas v. Karr*, 2007 WL 2728741 (W.D. Mich. 2007).

Defendants contend that plaintiffs cannot bring § 1983 claims regarding any misconduct proceedings or tickets they received because doing so would question the validity of those proceedings.  However, the undersigned suggests that plaintiff's claims in this regard should not be dismissed at the pleading stage.  *See e.g.*, *Thomas v. Eby*, 481 F.3d 434, 441-442 (6th Cir.2007).  Multiple cases stand for the proposition that a proven infraction of prison rules will generally satisfy the defendant's burden.  *Id.*, citing, *Henderson v. Baird*, 29 F.3d 464 (8th Cir. 1994), cert. denied, 515 U.S. 1145 (1995), *Hynes v. Squillace*, 143 F.3d 653 (2d

Cir.), cert. denied, 525 U.S. 907 (1998).  However, the Sixth Circuit noted that

such cases were decided on summary judgment, not a motion to dismiss.  *Thomas,*

*481 F.3d at 442*.  Thus, the undersigned suggests that summary dismissal of

plaintiff's retaliatory misconduct claims, based on defendants' claim that the

infractions were proven, is not appropriate.

    F.    Immunity for Hearing Officers

    Claims against hearing officers are directed to actions (or failures to act)

taken in their capacities as an official hearing officer for the state of Michigan.  As

such, they enjoy absolute judicial immunity from a § 1983 civil rights suit seeking

monetary damages.  *See Shelly v. Johnson*, 849 F.2d 228 (6th Cir.1988) (per

curiam).  The claims asserted against the defendants listed below, as found in the

following paragraphs, should be dismissed because they are barred by absolute

judicial immunity:

| Defendant | Complaint Paragraph(s) |
|---|---|
| Etelamaki | 302 |
| Faulkenstein | 250, 255, and 297 |
| Monahan | 243 |
| Mohrman | 165, 167, 168, 190, 227, 229, and 232 |
| Niedermeyer | 256 |

| Defendant | Complaint Paragraph(s) |
|-----------|------------------------|
| Perttu | 265 and 266 |
| Sweeney | 270 |

G.     Personal Involvement

    1.     Legal principles

Liability in a § 1983 action cannot be based on a theory of *respondeat superior*.  See *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).  "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability."  *Id.* at 694 n. 58, citing, *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).  As the Sixth Circuit has stated:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995), quoting, *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Several cases from the Sixth Circuit provide guidance on a supervisory

liability claim.  For example, the court has stated that "[p]laintiff must prove that [the supervisor defendants] did more than play a passive role in the alleged violations or show mere tacit approval of the goings on.  Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir.2006) (internal and external citations omitted).  Furthermore, the Sixth Circuit has stated:

> Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

*Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002), quoting, *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

Also, the Court has held that where defendants' "only roles ... involve the denial of administrative grievances or the failure to act ... they cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

upon 'a mere failure to act.'" *Id.* at 300, citing, *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).  Claims that are based simply on the denial of a grievance do not state a claim of constitutional dimension.  *See Martin v. Harvey*, 2001 WL 669983, *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee*, 199 F.3d at 300) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated ... in the claimed ... acts[ ]."); *Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff's ... grievance concerning the seizure to be without merit is insufficient to state a claim against them.").  Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or

knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

        2.      Analysis of defendants' motion and plaintiffs' complaint

Paragraph 215 alleges that one plaintiff sent a letter to defendant Bell asking for the return of legal materials that were confiscated by another officer. The undersigned suggests that these allegations do not state a claim against Bell because there was no personal involvement in the alleged constitutional violation.

Paragraph 321 alleges that a plaintiff sent a letter to defendant Ezrow asking him why his mail was being tampered with; Ezrow responded that he had nothing to do with it and that the plaintiff should contact the Postmaster General. This paragraph does not state a claim against Ezrow because it fails to allege that defendant tampered with plaintiff's mail or otherwise acted and should be dismissed.

In paragraph 242, plaintiff alleges that defendants Gray and Krauss retaliated against him because he received misconducts from other prison officials after he grieved Gray and Krauss. However, defendants argue that this paragraph fails to state a claim as to Gray and Krauss because the plaintiff does not allege that Gray or Krauss ever wrote or encouraged the writing of a retaliatory misconduct against the plaintiff. The undersigned suggests that paragraph 242

fails to state a claim against defendants Gray and Krauss, given that there is a complete absence of allegations that Gray or Krauss personally acted after being grieved.

In paragraph 244, the plaintiff claims that an officer confiscated some of his material and that he tried to resolve the issue with defendant Monahan, the officer's supervisor. Defendant Monahan argues that this paragraph does not state a claim because there is no allegation that he directly participated in any alleged wrongful conduct. The undersigned agrees that this paragraph fails to state a claim.

    H.    <u>Letters/Grievances</u>

        1.    Legal principles

A prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure. *See e.g.*, *Dunn v. Martin*, 178 Fed.Appx. 876, 878, 2006 WL 1049403 (11th Cir. 2006); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (stating that Constitution creates no entitlement to voluntarily established grievance procedure); *Bermudez v. Duenas*, 936 F.2d 1064 (9th Cir. 1991) (Prison officials' alleged failure to respond to a prisoner's letters does not rise to the level of a constitutional violation); *Walker v. Michigan Dep't of Corrections*, 128 Fed.Appx. 441, 445 (6th Cir. 2005) (same).

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

Moreover, to the extent that an inmate is dissatisfied with the responses to his grievances, he has failed to state a claim on which relief may be granted. *Hess v. Tulsa Co. Sheriff's Office*, 2008 WL 4682202, *5 (N.D. Okla. 2008), citing, *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (official's failure to process inmates' grievances, without more, is not actionable under section 1983); *Greer v. DeRobertis*, 568 F.Supp. 1370, 1375 (N.D. Ill. 1983) (prison officials' failure to respond to grievance letter violates no constitutional or federal statutory right). Indeed, as explained by the Eighth Circuit, "[a prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley*, 997 F.2d at 495, quoting, *Azeez v. DeRobertis*, 568 F.Supp. 8 (N.D. Ill. 1982); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (an inmate has no legitimate claim of entitlement to a grievance procedure); *see also Keenan v. Marker*, 23 Fed.Appx. 405, 407 (6th Cir. 2005) (There is no inherent constitutional right to an effective prison grievance procedure); *McGee v. Grant*, 1988 WL 131414, *1 (6th Cir. 1988) ("[I]nmate grievance procedures are not constitutionally required in state prison systems, therefore, any failure on the part of defendants to follow grievance procedures does not give rise to a § 1983 claim."); *Lee v. Mich. Parole Bd.*, 104 F.

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

Appx. 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Butterworth v. Jones*, 2007 WL 3256584, *2 (M.D. Tenn. 2007) ("Although prisoners have a First Amendment right to file grievances, ... [they] cannot premise a § 1983 claim against [a prison official] based on allegations that the grievance procedure produced an inadequate and/unresponsive result because there is no inherent constitutional right to a grievance procedure in the first place.").

       2.    Analysis of defendants' motion and plaintiffs' complaint

To the extent that any of plaintiffs' claims merely allege that prison officials failed to respond to letters, inadequately responded to letters, or involve complaints about how the grievance procedure was conducted, they fail to state a claim under § 1983.  The undersigned suggests that the following paragraphs of the complaint, as they pertain to the defendants named below, fail to state claims on which relief can be granted and should be dismissed:

| Defendant | Complaint Paragraph(s) |
|---|---|
| Etelamaki (listed as Dostaler) | 300, 307, 235, and 328 |
| Andison | 238 and 257 |

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

| Defendant | Complaint Paragraph(s) |
|---|---|
| Armstrong | 153, 155, 157, 166, 170, 171, 174, 176, 193, 203, 210, 235, 238, 239, 244, 247,249, 254, 257, 260, 262, 264, 265, 266, 268, 269, 270, 274, 276, 277, 278, 279, 280, 281, 282, 284, 285, 286, 287, 289, 291, 292, 293, 294, 295, 297, 298, 299, 300, 301, 302, 303, 306, 307, 308, 309, 319, 324, 328, 329, and 331 |
| Bell | 172 and 280 |
| Caruso | 223 and 305 |
| Eaton | 244, 249, 254, 280, 294, 295, 297, 298, and 299 |
| Evers | 262 and 293 |
| Farley | 175 |
| Hill | 301, 303, 304, and 331 |
| Hofbauer | 155, 166, 170, 171, 174, 176, 181, 182, 185, 192, 193, 197, 203, 217, 218, 220, 222, 228, and 234 |
| Ingram | 247 |
| Jondreau | 264, 265, 266, 268, 269, 270, 274, 276, 277, 279, and 300 |
| Kotila | 301 and 303 |
| Lalonde | 302 and 315 |
| LaPlante | 319, 324, and 329 |
| Luoma | 219, 221, 264, 265, 266, 268, 269, 270, 274, 276, 277, 278, 279, 281, 282, 284, 285, 286, 287, 302, 307, 319, 324, 328, 329, and 330 |
| Mullen | 170, 181, 185, and 235 |

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

| Defendant | Complaint Paragraph(s) |
|---|---|
| Monahan | 292 |
| Napal | 206 |
| Niedermeyer | 257 |
| Niemisto | 176, 193, 184, and 222 |
| Pass | 187, 204, 244, 249, 254, 260, 291, 294, 295, 297, and 298 |
| Smith | 281, 282, 285, 286, 287, and 300 |
| Schooley | 163 |
| Sweeney | 269, 279, 285, and 286 |
| Travino | 215 |
| Webb | 172 and 173 |
| Weisinger | 176 |
| Williams | 247, 262 |
| York | 158, 174, 182, 188, 235 |
| Horton | 301, 303, and 331 |
| Watson | 173, 238, 244, 247, 249, 254, 257, 260, 262, 291, 292, 293, 294, 295, 297, 298, and 299 |

Paragraph 321 alleges that a plaintiff sent a letter to Pittsley asking him why his mail was being tampered with; Pittsley responded that he had nothing to do with it and that the plaintiff should contact the Postmaster General. Defendant Pittsley argues that this paragraph does not state a claim. The undersigned agrees given that defendant had no obligation to even respond to plaintiff's letter.

Defendant Smith argues that paragraph 307 merely alleges that Smith failed to send a step-two grievance form to a plaintiff, but, there is no factual allegation tending to show that Smith intentionally failed to mail the form.  Defendant argues that even if he intentionally failed to send the appeal form, no constitutional right would be violated because the plaintiff could still file his claim in the Courts and be excused from the exhaustion requirement by showing that he was prevented from exhausting.  The undersigned suggests that no constitutional right is implicated in paragraph 307 because plaintiff has no constitutional right to the grievance process.  *Shehee*, *supra*.

Defendant Smith also argues that paragraph 323 merely alleges that Smith never received an appeal form given to defendant Butzin to be delivered to him and that this paragraph does not state a claim against Smith.  The undersigned is unable to discern any potential constitutional claim in paragraph 323 and it should be dismissed for the same reasons as paragraph 307.

I.      Prison regulations

        1.      Legal principles

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court instituted a four-part test to determine the constitutionality of prison regulation that impinges on an inmate's constitutional rights:  (1) "there must be a 'valid, rational connection'

between the prison regulation and the legitimate [and neutral] governmental interest put forward to justify it"; (2) the existence of "alternative means of exercising the right" available to inmates; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the absence of ready alternatives" available to the prison for achieving the governmental objectives. *Id.* at 90. If the connection between the regulation and the asserted goal is "arbitrary or irrational," then the regulation fails, irrespective of whether the other factors tilt in its favor. "Moreover, because the problems of prisons in America are complex and intractable, and because courts are particularly ill equipped to deal with these problems ... we generally have deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." *Shaw v. Murphy,* 532 U.S. 223, 229 (2001) (internal citation and quotation marks omitted).

As noted by the *Shaw* court, there are two potential constitutional claims arising from a prison policy. The first arises when the policy is arbitrary or irrational, and in such circumstances it will be struck down. The second arises when a prison regulation, "*as applied to*" a particular prisoner is not "reasonably related to legitimate penological interests." *Shaw,* 532 U.S. at 232. A prisoner bears a "heavy burden" if he is to succeed on either claim. *Id.* He must

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

"overcome the presumption that the prison officials acted within their 'broad discretion.'"  *Id*; *see also* *Thompson v. Campbell*, 81 Fed.Appx. 563, 569 (6th Cir. 2003).

Several of plaintiffs' claims involve the possession and use of materials relating to the Uniform Commercial Code (UCC).  "[A]busive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented."  *Marr v. Caruso*, 2008 WL 4426340, *4 (W.D. Mich. 2008) (citing cases); *see also* *Hudson v. Caruso*, 2007 WL 2363308 (W.D. Mich. 2007).  It is well-established that prisoners use the UCC and UCC-related materials to perpetrate fraud and harassment against government and prison officials and that the MDOC's "legitimate penological purpose in preventing such behavior cannot seriously be questioned." *Marr*, at *5.  Such policies have been held to "represent a rational means by which to achieve the legitimate goal of preventing prisoners from engaging in such fraudulent and illegal behavior." *Id*.  With respect to one particular policy used by the MDOC to confiscate such materials, District Judge Denise Page Hood entered an order enjoining the enforcement of subparagraph (HH)(23) of MDOC Policy Directive 05.03.118 (effective January 1, 2006).  *Jones*

*v. Michigan Dep't of Corrections*, 2006 WL 2805643 (E.D. Mich. 2006). Judge

Hood enjoined enforcement of this particular provision on the ground that it was

impermissibly vague. *Id.* Judge Hood subsequently made clear, however, that the

injunction applied only to subparagraph (HH)(23) and that prison officials retain

the authority to prohibit mail for any other legitimate purpose. *Jones v. Michigan*

*Dep't of Corrections*, 2007 WL 2875179 at * 3-4 (E.D. Mich. 2007).

        2.       Analysis of defendants' motion and plaintiffs' complaint

        Paragraph 268 alleges that defendant Perttu rejected a plaintiff's store order

for metered postage on his envelopes because the plaintiff put copyright symbols

next to his name. Defendant argues that this does not state a claim because

plaintiff was free to properly fill out the envelope. Notably, paragraph 268 also

alleges that the Step II grievance response indicated that use of the copyright

symbol by itself was not prohibited, unless the prisoner also includes language

which is threatening or coercive in nature, and that staff had been notified of this

policy. (Dkt. 1, pp. 99-100). The undersigned suggests that plaintiff has failed to

state a claim implicating the violation of any constitutional right and even if he

did, the regulation, as applied to plaintiff's claim was reasonably related to a

legitimate penological interest and was reasonable as applied to plaintiff in this

instance.

J.      Access to Courts

1.      Legal principles

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Significantly, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (*en banc*). To state a claim for unconstitutional denial of access to courts, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a direct appeal, a habeas corpus action, or a civil rights claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Further, an inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Johns v. MDOC*, 2008 WL 4712360, *5 (W.D. Mich. 2008), citing, *Vandiver v. Niemi*, 1994 WL 677685, at *1 (6th Cir. 1994). Courts in this circuit have held that an inmate

cannot show injury when he fails to state that he cannot replicate the confiscated documents. *Johns*, at *5, citing, *Vandiver*, at *1.

Many of the plaintiffs' claims involve communications among prisoners regarding various legal materials and incoming and outgoing mail pertaining to various legal materials. "It is clear in this circuit that an inmate does not have an independent right to help other prisoners with their legal claims. Rather, a jailhouse lawyer's right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court." *Smith v. Campbell*, 250 F.3d 1032, 1037 n. 1, quoting, *Thaddeus-X*, 175 F.3d at 395 (internal citations and quotation marks omitted); *see also Shaw, supra* (holding that prisoners do not possess a special First Amendment right to provide legal assistance to fellow inmates).

This Court has previously rejected the claim that legal assistance must relate to a "pending lawsuit." District Judge David M. Lawson found that contention to be "unavailing." *Nelson v. Gowdy*, 2006 WL 2604679, *2 (E.D. Mich. 2006), citing, *Thaddeus-X*, 175 F.3d at 383; *Gibbs v. Hopkins*, 10 F.3d 373, 375 (6th Cir. 1993). Judge Lawson concluded that while *Thaddeus-X* and *Gibbs* "both involved instances of assistance for preparing lawsuits," "nothing in those cases suggests

that legal assistance is limited only to legal actions then pending in a court." *Id*.

        2.      Analysis of defendants' motion and plaintiffs' complaint

In paragraph 254 of the complaint, plaintiff Peterson alleges that defendant Andison improperly confiscated his personal legal property.  In paragraph 295, Peterson alleges that Andison improperly confiscated his legal materials.  Plaintiff fails to allege that the materials related to litigation involving a direct criminal appeal, a civil rights action, or a habeas corpus petition, and fails to explain how he was adversely affected.  Thus, these paragraphs fail to state a claim against Andison and should be dismissed.

Defendant Ezrow argues that paragraph 319 fails to state a claim because the plaintiff Proctor was prohibited from sending legal materials to other prisoners due to a November 26, 2003 administrative order, so defendant Ezrow's interception of the mail did not violate any constitutional rights.  Paragraph 319 alleges that the plaintiffs were corresponding regarding preparation of materials for this lawsuit.  Thus, the claim falls with the scope of *Nelson v. Gowdy*.  However, nothing in paragraph 319 suggests that plaintiff suffered any prejudice or harm and for this reason, his claim must fail.

Plaintiff Peterson alleges that defendant Jondreau retaliated against him for participating in this lawsuit, his study of the UCC, and his political beliefs by

placing him in segregation.  Defendant argues that paragraphs 272 and 275 fail to state a claim for retaliation because they are conclusory and the instant lawsuit cannot be the cause of the alleged retaliation because this lawsuit was not filed until after the alleged retaliation.  Further, defendant argues that plaintiff's assertions of retaliation for "his study of the UCC and his political beliefs" fail to show that the plaintiff was engaged in protected conduct and are insufficient to show the element of causation because no facts are included from which a causal relationship could be inferred.  Nothing in these paragraphs suggests that plaintiff suffered specific harm or prejudice in this lawsuit, or any other civil rights action, from the alleged retaliation and thus, plaintiff fails to state a claim.

Paragraphs 196 and 198 allege that defendant Mullen provided a plaintiff with an "interpretation" of a prison policy and defendant Mullen argues that these allegations fail to state a claim and fail to show personal involvement.  In paragraph 196, plaintiff Proctor alleges that he inquired with the MBP litigation coordinator regarding whether paragraph T of PD 05.03.115 permitted him to communicate with co-plaintiffs regarding the preparation of a lawsuit.  According to paragraph 196, defendant Mullen responded to this inquiry and wrote that plaintiff Proctor was prohibited from communicating with "co-plaintiffs" until a lawsuit had been filed and accepted by the courts.  According to paragraph 198,

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

defendant Mullen and plaintiff Proctor had a similar conversation.  The undersigned suggests that while these allegations relate to defendant's alleged interference with plaintiff's access to the courts and preparation of a complaint, plaintiff has failed to allege that he suffered specific harm or prejudice in this lawsuit, or any other civil rights action, from the alleged retaliation and thus, plaintiff fails to state a claim.

Paragraph 269 alleges that defendant Pittsley refused to mail plaintiff's package with a sample writ of habeas corpus and brief in support and that it should have been sent out as legal, expedited mail.  Paragraph 269 also states that the package was sent out via regular mail.  According to paragraph 269, it was determined in the grievance process that the materials were UCC materials that should be destroyed.  (Dkt. 1, pp. 99, 101).  The undersigned suggests that paragraph does not state a claim against Pittsley because, while plaintiff alleges that the mail related to a habeas corpus action of another inmate, he fails to allege that any specific harm or prejudice occurred.

Paragraph 220 alleges that defendant Weisinger intercepted a piece of mail sent from a non-prisoner plaintiff to the prisoner-plaintiff and accused them of operating an "organization to facilitate misconduct for prisoners."  Plaintiffs allege that the confiscation was retaliatory, but defendant argues that no protected

conduct is alleged and this paragraph therefore fails to state a claim. The undersigned agrees that paragraph 220 fails to state claim given that it contains no allegations implicating any plaintiff's constitutional right to access the courts.

Paragraph 241 alleges that defendant Williams denied a request for a legal agreement between two of the plaintiffs. One of those plaintiffs had been enjoined from entering such agreements at an administrative hearing. Defendant Williams argues that he was acting pursuant to a valid administrative decision and did not violate the plaintiff's rights because he had no right to enter into legal agreements. A review of paragraph 241 fails to reveal any allegation that the legal agreement sought was related to the prosecution of a direct criminal appeal, a habeas corpus action, or a civil rights claim. Thus, paragraph 241 fails to state a claim for denial of access to courts and should be dismissed.

Paragraphs 165, 168, and 232 allege that defendant York intercepted letters from the plaintiff that violated the November 11, 2003 NOI that prohibited the plaintiff from entering into legal agreements. According to defendant York, he was acting pursuant to a valid administrative decision and did not violate the plaintiff's rights because he had no right to assist other inmates with legal matters. Paragraphs 165 and 168 relate to plaintiff's pursuit of this case and could implicate his right of access the courts, however, plaintiff fails to allege how he

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

2:07-cv-12414-PDB-MJH    Doc # 193    Filed 06/19/09    Pg 36 of 72    Pg ID 1748

suffered any prejudice or harm in this lawsuit as a result of the alleged retaliation. Paragraph 232 relates to correspondence between two plaintiffs regarding how to file a grievance and affidavit and does not contain an allegation relating to a direct criminal appeal, habeas corpus action, or civil rights complaint.  Thus, plaintiff fails to state a claim.

Paragraph 244 alleges that defendant Doering confiscated Petersen's typing paper, legal materials, beard trimmer, cup, and religious medallion for no reason other than to harass and retaliate against plaintiff.  Nothing in this paragraph suggests that plaintiff suffered specific harm or prejudice in this lawsuit, or any other civil rights action, from the alleged retaliation and thus, plaintiff fails to state a claim.  Moreover, plaintiff's general assertion of "retaliation" for no particular reason fails to show that plaintiff was engaged in protected conduct and is insufficient to show the element of causation because no facts are included from which a causal relationship could be inferred.

K.    Retaliation

1.    Legal principles

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.  *See Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Retaliation based upon

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

a prisoner's exercise of his or her constitutional rights violates the Constitution.

See *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  To establish a First

Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff

engaged in activities protected by the Constitution or statute; (2) the defendant

took an adverse action that would deter a person of ordinary firmness from

continuing to engage in that conduct; and (3) that this adverse action was taken at

least in part because of the exercise of the protected conduct.  *Id.*  "[I]f a prisoner

violates a legitimate prison regulation, he is not engaged in 'protected conduct,'

and cannot proceed beyond step one."  *Id.* at 395.  Conclusory allegations are

insufficient to show that a defendant was motivated by the exercise of a plaintiff's

First Amendment rights.  *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).  Bare

allegations of malice on the part of a defendant are not enough to establish

retaliation claims.  *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).  Moreover,

"temporal nexus" is a factor in determining a causal connection in a First

Amendment retaliation claim.  *Mulazim v. Corrigan*, 7 Fed.Appx. 427 (6th Cir.

2001).

Moreover, the plaintiff must be able to prove that the exercise of the

protected right was a substantial or motivating factor in the defendant's alleged

retaliatory conduct.  *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429

U.S. 274, 287 (1977). If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct. *Id.*; *Thaddeus-X*, 175 F.3d at 399. A transfer to another prison at the same security level is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights. *Mandela v. Campbell*, 1999 WL 357825, at *3 (6th Cir. 1999). On the other hand, a transfer to administrative segregation would be considered a sufficiently adverse action. *See Thaddeus-X*, 175 F.3d at 396.

        2.      Analysis of defendants' motion and plaintiffs' complaint

In paragraph 210, plaintiff Proctor alleges that, in retaliation for his participation in this lawsuit, his study of the UCC, and his political beliefs, defendants McKee and Perry retaliated against him by transferring him from a Level IV facility to a Level V facility and plaintiff claims that he met the guidelines for a Level II facility. Defendants argue that paragraph 210 does not state a claim because approving a prisoner transfer does not violate the prisoner's constitutional rights and because a prisoner has no right to confinement at any particular prison or security level. The undersigned suggests that, to the extent that plaintiff Proctor alleges retaliatory transfer based on his participation in the preparation of this lawsuit, and he was transferred to a higher security facility, he

has stated a claim.

Similarly, paragraph 207 alleges that defendant Schooley authorized transferring plaintiff Proctor to a level IV facility even though his points indicated that he should have been housed at level II. When read in conjunction with paragraph 126, where plaintiff alleges that he was transferred to a higher security facility in retaliation for filing a grievance, this paragraph states a claim.

Defendant Sweeney argues that paragraphs 272 and 275 fail to state a claim for retaliation because they are conclusory. Defendant argues that plaintiff's general assertions of retaliation for his "involvement in the lawsuit, study of the UCC and his political beliefs" fail to show that plaintiff was engaged in protected conduct and are insufficient to show the element of causation because no facts are included from which a causal relationship could be inferred. The undersigned agrees and these claims should be dismissed.

L.    Analysis of Remaining Aspects of Motions to Dismiss

**Defendant Andison**

Plaintiff Proctor alleges that he wrote to defendant Andison asking him to clarify his disposition of a hearing report. (Dkt. 1, ¶ 200). These allegations against Andison do not state a claim on which relief can be granted. *See Walker* and *Shehee*, *supra*. In paragraph 262, Peterson alleges that Andison retaliated

against him based on an administrative segregation behavior report.  The
undersigned is unable to identify any underlying constitutionally protected right
on which this claim is based.  Thus, the undersigned suggests that it should be
dismissed for failure to state a claim.

## Defendant Armstrong

Defendant Armstrong alleges that paragraphs 311 and 312 do not state a
claim because they allege only that Armstrong rejected complaints forwarded to
him by the Civil Service Commission.  According to the motion to dismiss, these
"complaints" were not in correct grievance form, and Armstrong had no duty to
respond to them.  The undersigned suggests that plaintiff's allegations in these
paragraphs implicate no constitutionally protected interest.  *See Butterworth*,
*supra*.

## Defendant Butzin

In paragraph 323, plaintiff Chandler alleges that he gave Butzin a step-two
grievance appeal form on September 16, 2004, but the appeal form never got filed.
In paragraph 324, plaintiff Chandler alleges that he filed a grievance against
Butzin alleging an intentional interference with his right to pursue a grievance.
Butzin argues that plaintiff's claim fails because there is no factual allegation
tending to show that Butzin intentionally lost the appeal form and there is no

allegation that the plaintiff was unable to re-file the appeal form without consequence.  Butzin further argues that even if he intentionally failed to file the grievance appeal, no constitutional right would be violated because plaintiff could still file his claim in the courts and be excused from the exhaustion requirement by showing that he was prevented from exhausting.

The undersigned suggests that plaintiff has alleged sufficient personal involvement by Butzin, an adverse action (the failure to file a grievance appeal on plaintiff's behalf), and protected conduct (plaintiff's attempt to file a grievance appeal).  It is not clear from plaintiff's complaint or defendant's motion to dismiss whether plaintiff ultimately exhausted the initial grievance or whether he relies on the exhaustion (presuming it occurred) of the subsequent grievance that plaintiff submitted regarding Butzin's conduct of the appeal of the initial grievance.  As set forth above, whether all or part of plaintiff's claims against Butzin were exhausted cannot be decided on the record currently before the Court.

**Defendant Caruso**

Paragraphs 179, 186, 205, and 224 of the complaint allege that plaintiffs sent letters to Caruso requesting "declaratory rulings" and that she failed to respond.  Defendant argues that she was under no constitutional obligation to supply such rulings to the plaintiffs, as the applicable statute provides that "an

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

agency may issue a declaratory ruling," so these paragraphs fail to state a claim.

The undersigned suggests that it is obvious from the face of the complaint that these claims are not exhausted.  As recently observed by this Court, "a request for a declaratory ruling pursuant to the Michigan Administrative Code does not exhaust a prisoner's administrative remedies because prisoners must exhaust the institutional grievance procedure, not some alternative remedy that is not designed to address prison conditions." *Cadogan v. Vittitow*, 2007 WL 2875464, *3 (E.D. Mich. 2007)*, quoting, *McKaye v. Burnett*, 104 Fed. Appx. 515, 517 (6th Cir. 2004) (internal quotation marks and citations omitted)).  The undersigned suggests that these paragraphs fail to state a claim because it is obvious on their face that they are unexhausted.  *See e.g.*, *Deruyscher v. Michigan Dep't of Corrections Health Care*, 2007 WL 1452929, *2 (E.D. Mich. 2007)*, citing,  *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921-22 (2007) (While the failure to exhaust is an affirmative defense, prisoner complaints may still be subject to *sua sponte* dismissal for failure to exhaust administrative remedies); *Spaulding v. Oakland Co. Jail Medical Staff*, 2007 WL 2336216, *3 (E.D. Mich. 2007) (Where it is clear from the face of the complaint that a plaintiff failed to properly exhaust his administrative remedies in accordance with the applicable grievance policy, the plaintiff's complaint is subject to *sua sponte* dismissal for failure to state a claim

pursuant to *Jones v. Bock*.).

## **Defendant Hofbauer**

Defendant Hofbauer argues that paragraph 162 does not state a claim because a prison official's failure to refer alleged prison employee misconduct to the Internal Affairs Section does not affect a prisoner's constitutional rights. The undersigned agrees that this paragraph does not state a claim and should be dismissed. *See Hess*, *Shehee*, *Bermudez*, and *Butterworth*, *supra*.

## **Defendant Hosely**

_____Paragraph 209 alleges that defendant Hosely would frequently shake down plaintiff's cell looking for prohibited UCC materials and that he would leave the cell in disarray. Defendant argues that this paragraph does not state a claim because a prisoner has no right against his cell being searched for contraband and because leaving the cell in disarray does not rise to a constitutional violation. The undersigned suggests that no constitutional right is implicated in paragraph 209, given that plaintiff fails to even allege that any legal materials were confiscated.

Defendant Hosely also argues that paragraph 210 does not state a claim to the extent that it alleges that he merely responded to a grievance because responding to a grievance does not give rise to a constitutional violation. The undersigned agrees and this claim found in paragraph 210 should be dismissed.

According to defendant Hosely, paragraph 210 does not otherwise state a claim against him because, although it alleges retaliation, it does not allege the specific protected conduct.  Defendant Hosely asserts that plaintiff Proctor's assertions of retaliation for his "study of and involvement with the UCC and his political beliefs" fail to show that the plaintiff was engaged in protected conduct and are insufficient to show the element of causation because no facts are included from which a causal relationship could be inferred.  Defendant Hosely also argues that "transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights."  As set forth above, plaintiff Proctor claims a retaliatory transfer to a higher security correctional facility based, in part, on his participation in the preparation of this lawsuit.  The undersigned suggests that, for the same reasons set forth above with respect to this same claim asserted by Proctor against other defendants, plaintiff has stated a claim.

**Defendant Marschke**

Defendant Marschke alleges that paragraph 169 does not state a claim because the Internal Affairs Section is not constitutionally obligated to investigate prisoner complaints.  The undersigned is unable to discern any constitutional right that may be implicated in the paragraph and suggests that this claim be dismissed.

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

*See Hess*, *Shehee*, *Bermudez*, and *Butterworth*, *supra*.

## Defendant Niemisto

After a review of paragraph 189, the undersigned suggests that it does not allege wrongdoing by defendant Niemisto and thus, the motion to dismiss is unnecessary in this regard.  Paragraph 202, in which plaintiff Proctor alleges that defendant Niemisto threatened him with a major misconduct if he continued doing his legal work, does not state a claim because a mere threat is not a constitutional violation.  "A threat by a jail or prison officer is not per se unconstitutional because the plaintiff has no protectable right not to have threats made against him." *Snyder v. Bradley Co. Justice Center*, 2008 WL 2357645, *6 (E.D. Tenn. 2008), citing, *Williams v. Gobles*, 2000 WL 571936, at *1 (6th Cir. 2000) (neither verbal harassment nor threats constitute punishment within the context of the Eighth Amendment); *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (federal right must be actually denied, not merely threatened); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (explaining that verbal abuse is not cognizable under § 1983).

## Defendant Perry

Defendant Perry argues that paragraph 209 does not state a claim for a constitutional violation because it merely alleges that defendant Perry routinely

asked a plaintiff whether he had UCC materials. The undersigned agrees that merely questioning a prisoner regarding his possession of personal property or legal materials does not implicate a constitutional right.

Defendant Perry also argues that paragraph 210 fails to state a claim for retaliation because it is conclusory. Further, defendant argues that plaintiff's claim of retaliation for his "study of and involvement with the UCC and his political beliefs" fail to show that plaintiff was engaged in protected conduct and are insufficient to show the element of causation. Defendant Perry also argues that "transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." As set forth above, plaintiff Proctor claims a retaliatory transfer to a higher security correctional facility based, in part, on his participation in the preparation of this lawsuit. The undersigned suggests that, for the same reasons set forth above with respect to this same claim asserted by Proctor against other defendants, plaintiff has stated a claim.

**Defendant Pittsley**

Paragraph 285 alleges that defendant Pittsley did not mail plaintiff's letters being sent to nine state senators and representatives. The letters were rejected because the plaintiff did not pay for postage and they did not qualify as legal mail

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

because they were not addressed to a court, attorney, or party to a lawsuit.

Defendant Pittsley argues that he was not required to mail for free any letter the

plaintiff wished and this paragraph does not state a claim.  The undersigned agrees

that plaintiff has failed to state a claim in paragraph 285 and no constitutional right

is implicated.

Paragraph 286 alleges that Pittsley rejected a piece of mail coming from

another prisoner, who plaintiff alleges was, at that time (August 5, 2005), a

plaintiff "in this suit."  (Dkt. 1, p. 113).  The grievance investigation found that the

letter was rejected because the name and prisoner number did not match.

Defendant argues that policy requires prison mail to be addressed to the prisoner

using the prisoner's name and prisoner number and that this requirement is not a

constitutional infirmity.  The undersigned agrees that this paragraph does not state

a claim.

Moreover, to the extent that plaintiff attempts to allege that the

correspondence at issue related to correspondence with a former plaintiff in this

suit, the undersigned finds that this paragraph does not state a denial of access to

courts claim because plaintiff has not alleged that he suffered any specific harm or

prejudice in this lawsuit as a result of defendant's conduct.

## Defendant Pokely

Defendant Pokely argues that plaintiff fails to state a claim in paragraph 203.  Non-prisoner plaintiff Hurd mailed plaintiff Proctor's grandson ten dollars in a birthday card in Proctor's name, even using the Proctor's name and address as the return address. The grandson's address was apparently wrong though, because the card was returned to Proctor in prison.  He was not allowed to possess the piece of mail because prisoners are not allowed to possess money.  Plaintiff alleges that Pokely deprived him of due process by writing in a hearing report, contrary to their conversation, that plaintiff stated at the hearing that his wife sent the money in his name to his grandson.  Plaintiff claims that defendant Pokely deprived him of due process by denying him a formal hearing on the rejected mail.

The undersigned is unable to discern how these allegations even potentially implicate any constitutional right.  Thus, this paragraph does not state a claim against Pokely and should be dismissed.

## Defendant Weise

Defendant Weise argues that paragraphs 310, 314, 318, 320, 322, 331, and 333 do not state a claim because they merely allege that Weise did not provide the plaintiff with adequate mental-health treatment.  According to defendant, these allegations amount to no more than a disagreement over the course of care

prescribed and plaintiff has been seen by medical staff repeatedly regarding his alleged psychological problems. (Dkt. 1, ¶ 331).

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981). Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs. *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. He must show that he had a serious medical need and he must show that a defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991). Plaintiff's complaint refers to several dates of treatment. However, after reviewing the allegations in these paragraphs, in which plaintiff alleges that defendant Weise failed to refer him for psychiatric treatment after he attempted suicide, the undersigned suggests that plaintiff has sufficiently stated a claim for deliberate indifference. Defendant's assertion that plaintiff's claim is without merit would be better suited to a motion for summary judgment, where the Court has the opportunity to review the accompanying medical records, rather than trying to discern from the plaintiff whether plaintiff's

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

care was "woefully inadequate" or this amounts to a mere difference in opinion regarding the court of treatment.  *Westlake v. Lucas*, 537 F.2d 857, 860-861 (6th Cir. 1976) (Further, a claim of inadequate medical treatment may state a constitutional claim if the treatment rendered is "so woefully inadequate as to amount to no treatment at all.").

## Defendant York

Paragraph 203 alleges that defendant York rejected a piece of mail sent to him containing a ten-dollar bill.  This does not state a constitutional violation because prisoners are not permitted to possess money.  The undersigned cannot discern how the allegations in paragraph 203 implicate any constitutional right and recommends dismissal of this claim.

  M.  Improper Joinder of Claims and Parties

    1.  Legal principles

With respect to plaintiffs' remaining claims, the undersigned suggests that plaintiffs cannot satisfy Federal Rules of Civil Procedure 18 and 20 and should not be permitted to bring a joint action.  Plaintiffs bring a variety of claims based on retaliation for filing grievances, interference with access to courts, interference with access to courts, and deliberate indifference to medical needs.  Each separate claim by each plaintiff will require a particularized analysis regarding statute of

limitations, exhaustion of administrative remedies, and on the substance.  As
discussed below, plaintiffs' complaint fails to satisfy Rules 18 and 20 and should
either be severed.

Rule 20(a) limits the joinder of parties, and Rule 18(a) limits the joinder of
claims.  Fed.R.Civ.P. 18(a), 20(a).  Rule 20(a)(2) governs when *multiple
defendants* may be joined in one action:  "[p]ersons ... may be joined in one action
as defendants if: (A) any right to relief is asserted against them jointly, severally,
or in the alternative with respect to or arising out of the same transaction,
occurrence, or series of transactions or occurrences; and (B) any question of law or
fact common to all defendants will arise in the action."  Fed.R.Civ.P. 20(a)(2)(A)
and (B).  Rule 20(a)(1) governs when *multiple plaintiffs* may bring a joint action:
"Persons may join in one action as plaintiffs if: (A) they assert any right to relief
jointly, severally, or in the alternative with respect to or arising out of the same
transaction, occurrence, or series of transactions or occurrences; and (B) any
question of law or fact common to all plaintiffs will arise in the action."  Rule
18(a) provides: "A party asserting a claim ... may join, as independent or
alternative claims, as many claims as it has against an opposing party."
Fed.R.Civ.P. 18(a).

Where multiple parties are named, the analysis under Rule 20 precedes that

under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes
> relevant only when there is more than one party on one
> or both sides of the action. It is not concerned with
> joinder of claims, which is governed by Rule 18.
> Therefore, in actions involving multiple defendants Rule
> 20 operates independently of Rule 18...
>
> **Despite the broad language of Rule 18(a), plaintiff
> may join multiple defendants in a single action only if
> plaintiff asserts at least one claim to relief against
> each of them that arises out of the same transaction
> or occurrence and presents questions of law or fact
> common to all** ...

*Garcia v. Munoz*, 2008 WL 2064476, *3 (D. N.J. 2008) (emphasis added),

quoting, Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, 7 Federal

Practice & Procedure Civil 3d, § 1655; *see also Ross v. Meagan*, 638 F.2d 646,

650 n. 5 (3d Cir. 1981), overruled on other grounds, *Neitzke v. Williams*, 490 U.S.

319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both

commonality and same transaction requirements are satisfied).

Accordingly, "a civil plaintiff may not name more than one defendant in his

original or amended complaint unless one claim against each additional defendant

is transactionally related to the claim against the first defendant and involves a

common question of law or fact." *Garcia*, at *3; *see also Nali v. Michigan Dep't*

*of Corrections*, 2007 WL 4465247 (E.D. Mich. 2007), citing, *Crutcher v.*

*Commonwealth of Kentucky*, 1992 WL 98020, *3 (6th Cir. 1992) (For a plaintiff's

claims against multiple defendants to be properly joined, they must satisfy both

requirements set forth in Rule 20(a): (1) there must be a right to relief arising out

of the same transaction or occurrence, and (2) there must be a question of law or

fact common to all defendants.).  Courts may consider many different factors when

considering whether civil rights claims arise from the same transaction or

occurrence, including, "the time period during which the alleged acts occurred;

whether the acts of ... are related; whether more than one act ... is alleged; whether

the same supervisors were involved, and whether the defendants were at different

geographical locations." *Nali*, at *3, citing, *Brown v. Worthington Steel, Inc.*, 211

F.R.D. 320, 323-325 (S.D. Ohio 2002).

This same two-prong test applies when multiple plaintiffs are involved.  For

example, in *Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997), the court

addressed whether a single complaint by 50-plus plaintiffs asserting mandamus

relief against the Department of Immigration and Naturalization was appropriate

based on the allegations that the defendants unreasonably delayed adjudicating the

plaintiffs' applications and petitions.  The Ninth Circuit concluded that the

plaintiffs failed to satisfy both prongs of the Rule 20(a) test.  *Id*. at 1350.  The

court noted that the first prong – "same transaction" requirement – refers to

"similarity in the factual background of a claim." *Id*.  While the "basic connection

among all the claims is the alleged procedural problem of delay," the court

concluded that the "mere allegation of general delay is not enough to create a

common transaction or occurrence." *Id*.  Given that each plaintiff "waited a

different length of time, suffering a different duration of alleged delay," that "the

delay is disputed in some instances and varies from case to case," and that "there

may be numerous reasons for the alleged delay," the claims did not sufficiently

create a common transaction or occurrence.  *Id*., citing, *Harris v. Spellman*, 150

F.R.D. 130, 132 (N.D. Ill. 1993) (allegedly similar procedural errors do not

convert independent prison disciplinary hearings into same series of transactions

or occurrences when hearings involved different incidents of purported

misconduct raising different issues of law.).  This is very much like *Coughlin*,

where the plaintiffs allege that defendants subjected them to the same or similar

treatment, but the claims are factually unrelated.  Thus undersigned suggests that

plaintiffs' overarching theme of a statewide "conspiracy" does not satisfy Rules 18

and 20.

　　As the Seventh Circuit recently explained, a prisoner may not join in one

case all defendants against whom he may have a claim, unless the prisoner

satisfies the dual requirements of Rule 20(a)(2):

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

>Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)...

>A buckshot complaint that would be rejected if filed by a free person-say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions-should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also*, *Garcia*, at *3;

*Bolling v. Hayman*, 2008 WL 3843515, *2 (D. N.J. 2008).  In this case, some plaintiffs assert claims against defendants located at different prisons.  The undersigned suggests that even each plaintiff cannot join all their claims in a single suit.  Rather, to the extent that each plaintiff has multiple related claims against multiple defendants who work at the same institution, such claims could be brought together.  But, a plaintiff cannot bring all claims, regardless of type, against all defendants who are spread out at various institutions.  In such a circumstance, a plaintiff has used an improper "buckshot" complaint.

   The undersigned is aware that joinder of claims and remedies is encouraged.

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966), the Supreme Court held that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." Consistent with this policy, the requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. *Swan v. Ray*, 293 F.3d 1252,1253 (11th Cir. 2002). The undersigned suggests, however, that plaintiffs, especially prisoners, do not have free reign to join multiple claims and defendants in any manner they choose. As the New Jersey District Court recently observed, "the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit." *Boretsky v. Corzine*, 2008 WL 2512916, *4 (D. N.J. 2008), citing, *Pruden v. SCI Camp Hill*, 252 Fed.Appx. 436 (3d Cir. 2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007); *Coughlin, supra.* And, Rule 20 does not authorize a plaintiff to "incorporate into an existing action a different action against different parties and presenting entirely different factual and legal issues." *Lovelace v. Lee*, 2007 WL 3069660, *1 (W.D. Va. 2007), quoting, *Trail Realty Inc. v. Beckett*, 462 F.2d 396, 399-400 (10th Cir. 1972).

The New Jersey District Court also discussed the pervasive impracticalities associated with multiple-plaintiff prisoner litigation, which militates against

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

permissive joinder even if it were otherwise allowed by Rule 20(a).  *Boretsky*, at *5.  Among the difficulties noted are the "need for each plaintiff to sign every pleading, and the consequent possibilities that documents may be changed as they are circulated, or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation."  *Id*.  A Wisconsin federal court also found that permitting multiple prisoner-plaintiffs to proceed in a single action invites violations of Rule 11(a), which requires every pleading to be signed by all *pro se* plaintiffs.  *Ghashiyah v. Frank*, 2008 WL 680203, *1 (E.D. Wis. 2008).  Moreover, it often results in pleadings being filed on behalf of plaintiffs without their consent.  *Id.*

Some courts have also noted that "jail populations are notably transitory, making joint litigation difficult."  *Boretsky*, at *5, citing, *White v. Tennessee Bd. of Probation and Paroles*, 2007 WL 1309402 (W.D. Tenn. 2007) ("[I]t is administratively impractical to permit five inmates at three institutions to litigate their claims in a single action").  Other District Courts have also pointed to the "need for resolution of individualized questions of fact and law surrounding the requirement for exhaustion of administrative remedies under 42 U.S.C. § 1997e(a)."  *Boretsky*, at *6, citing, *Worthen v. Oklahoma Dept. of Corrections*, 2007 WL 4563665  (W.D. Okla. 2007) (Report and Recommendation), Report and

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

Recommendation adopted in pertinent part, 2007 WL 4563644 (W.D. Okla. 2007);

*Lilly v. Ozmint*, 2007 WL 2022190 (D. S.C. 2007).

The *Boretsky* court found the reasoning of these other District Courts to be

persuasive, noting that prisoners are "not in the same situation as non-prisoner

joint plaintiffs; prisoners' circumstances make joint litigation exceptionally

difficult." *Boretsky*, at *6. The court concluded, however, that it would "not be

just to dismiss this case in its entirety merely because the co-plaintiffs' claims may

not be joined." *Id.* Instead, pursuant to Rule 21, the court dismissed all plaintiffs

except the first named plaintiff, and directed the Clerk of the Court to open a

separate case for each dismissed plaintiff, docketing the original complaint and the

court's opinion and order in all the newly severed cases. Each plaintiff was also

granted leave to file an amended complaint asserting his individual claims. *Id.*

            2.      Remedy for Misjoinder

Federal Rule of Civil Procedure 21 provides that, when misjoinder occurs,

"parties may be dropped or added by order of the court on motion of any party or

its own initiative at any stage of the action and on such terms as are just. Any

claim against a party may be severed and proceeded with separately." *Nali v.*

*Michigan Dep't of Corrections*, 2007 WL 4465247, *3 (E.D. Mich. 2007); *see*

*also Arista Records, LLC v. Does 1-9*, 2008 WL 2982265 (S.D. Ohio 2008) (The

Court may *sua sponte* sever claims and parties.); *Sires v. Eli Lilly & Co.*, 2005 WL 1239636 (E.D. Ky. 2005) (same); *Cosgrove v. Rios*, 2008 WL 4410153 (E.D. Ky. 2008) (The Court may sever claims *sua sponte*, which results in the creation of separate actions); *Globe American Cas. Co. v. Davis*, 2008 WL 586419 (E.D. Tenn. 2008) (same).

As this Court has observed, under Rule 21, it has broad discretion "to order a severance to avoid causing unreasonable prejudice and expense to the defendant ... and to avoid great inconvenience in the administration of justice." *Nali*, at *3. Similarly, the Western District of Kentucky observed that Rule 21 gives the Court "discretion to ... add parties, drop (dismiss) parties, and may sever [a]ny claim against a party." *Jones v. Pancake*, 2007 WL 4104568 (W.D. Ky. 2007), quoting, 4-21 Moore's Federal Practice-Civil § 21.02 (internal quotation omitted); *see also* Moore's Federal Practice-Civil § 21.06 ("Severance under Rule 21 results in separate actions."). Further, "[a]s with any case in federal court, [the severed action] may be transferred under appropriate circumstances.... Indeed, the fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance." *Id*.[2]

---

[2] Venue in a federal question case lies in the district in which any defendants reside or in which a substantial part of the events or omissions giving

Misjoinder of parties is not sufficient to dismiss an action as a whole under Rule 21, but it can be sufficient to dismiss misjoined parties.  *Harris v. Gerth, 2008 WL 4524134, \*4 (E.D. Mich. 2008)*, citing, *Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 682 (6th Cir. 1988)* ("Parties may be dropped ... by order of the court ... of its own initiative at any stage of the action and on such terms as are just."); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich., 539 F.Supp.2d 924, 940 (E.D. Mich. 2008)*; *Carney v. Treadeau, 2008 WL 485204, \*2 (W.D. Mich. 2008)* (In the event of misjoinder, "the court has two remedial options:  (1) misjoined parties may be dropped 'on such terms as are just'; or (2) any claims against misjoined parties 'may be severed and proceeded with separately.'") (internal quotation omitted).

In the interests of judicial efficiency and economy, the undersigned recommends severance over dismissal.  Permitting all of these claims to go forward as a group would be, at best, unwieldy and impossible to manage, given

---

rise to the claim occurred. 28 U.S.C. § 1391(b).  Public officials "reside" in the county in which they serve for purposes of venue in a suit challenging official acts.  *Wichert v. Caruso, 2007 WL 2904053, \*3 (W.D. Mich. 2007)*, citing, *Butterworth v. Hill, 114 U.S. 128, 132 (1885)*, and *O'Neill v. Battisti, 472 F.2d 789, 791 (6th Cir.), cert. denied, 411 U.S. 964 (1973)*.  Defendants in this case are employed at approximately six different correctional facilities and at the MDOC main office in Lansing.

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

the exhaustion issues relating to each claim (of which each plaintiff appears to have a multitude), and, more importantly, the varied proofs and defendants that will be associated with each separate claimed instance of denial of access to the courts, improper mail delivery, and the associated confiscation of personal property.

With respect to the claims that are not otherwise dismissed by the Court, the undersigned suggests that the Court permit each plaintiff to file a proposed amended complaint, or complaints, that assert the claims that have not otherwise been dismissed, against each group of defendant(s) by facility. As this Court held long ago, the "broad language of the Rules of Civil Procedure on joinder of claims and remedies, as well as parties, Rules 18 and 20, is limited by Rule 82 providing that the Rules of Civil Procedure shall not be construed to extend or limit the jurisdiction of the district courts or the venue of actions therein." *Square D Co. v. United Elec., Radio and Mach. Workers of America*, 123 F.Supp. 776, 782 (E.D. Mich. 1954); *see also U.S. ex rel. Fry v. Guidant Corp.*, 2006 WL 1102397 (M.D. Tenn. 2006) (same). Thus, the undersigned suggests that each plaintiff should not be permitted to avoid the venue rules by joining defendants from various

institutions.  *See also, Harris v. Gerth*, 2009 WL 368011 (E.D. Mich. 2009).[3]

Under this construct, the undersigned suggests that plaintiffs be permitted to file

**proposed** amended complaints as follows.

      A.     Plaintiff **Proctor** has claims against multiple defendants who work at

four different facilities, only one of which is located in the Eastern District of

Michigan.  To the extent that plaintiff Proctor's claims are not dismissed, the

undersigned suggests that he be permitted to file separate proposed amended

complaints, each of which may only include multiple defendants if those

defendants work at the same facility.  Specifically, plaintiff Proctor may submit

four proposed amended complaints asserting only those claims that have not been

otherwise dismissed against:  (1) the ARF defendants (Eastern District); (2) the

MBP defendants (Western District); (3) the IBC defendants (Western District); (4)

---

    [3] In *Harris v. Gerth*, the proposed amended complaint of the plaintiff was
rejected because the plaintiff included "nineteen causes of action, which include
allegations of Defendants' misconduct as varied as denying [the plaintiff] access
to courts, racketeering, religious discrimination..., and the enforcement of vague
disciplinary rules.  Such variance in claims cannot be said to present "any question
of law or fact common to all defendants."  *Id.*, citing, Fed.R.Civ.P. 20(a)(2). The
Court also found that this was "especially true where the population of defendants
named for each cause of action varies from two...to ten... and...[t]he wide variety
of causes of action and the variable number of defendants named in each presents
the kind of 'buckshot complaint that ... should be rejected if filed by a prisoner.'
*Id.*, quoting, *George*, 507 F.3d at 607.

and the LRF defendants (Western District).  Once the proposed amended complaints are filed and the Court concludes that they otherwise comply with the Court's order, the new complaints should be severed and assigned new case numbers, and, with respect to categories (2) - (4) above, the cases will be transferred to the Western District.

B.      Plaintiff **Hurd** may submit three proposed amended complaints asserting only those claims that have not been otherwise dismissed against:  (1) the ARF defendants (Eastern District); (2) the MBP defendants (Western District); and (3) the AMF defendants (Western District).  Once the proposed amended complaints are filed and the Court concludes that they otherwise comply with the Court's order, the new complaints should be severed, assigned new case numbers, and, with respect to categories (3) - (4) above, the cases will be transferred to the Western District.

C.      Plaintiff **Jividen** may submit one proposed amended complaint asserting only those claims that have not been otherwise dismissed against: the MBP defendants (Western District).  Once plaintiff Jividen's proposed amended complaint is filed and the Court concludes that they otherwise comply with the Court's order, the new complaint should be severed and assigned a new case number, and transferred to the Western District.

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

D.      Plaintiff **Petersen** may submit two proposed amended complaints asserting only those claims that have not been otherwise dismissed against:  (1) the ARF defendants (Eastern District); and (2) the AMF defendants (Western District). Once the proposed amended complaints are filed and the Court concludes that they otherwise comply with the Court's order, the new complaints should be severed and assigned new case numbers, and, with respect to category (2) above, that case will be transferred to the Western District.

E.      Plaintiff **Chandler** may submit two proposed amended complaints asserting only those claims that have not been otherwise dismissed against: (1) the ARF defendants (Eastern District); and (2) the AMF defendants (Western District). Once the proposed amended complaints are filed and the Court concludes that they otherwise comply with the Court's order, the new complaints should be severed and assigned new case numbers, and, with respect to category (2) above, that case will be transferred to the Western District.

Plaintiffs are cautioned that, should the District Court permit them to file amended complaints, such amended complaints must comply with Federal Rules 18 and 20 and must follow the venue rules stated above.  Any failure to strictly adhere to these rules and any order of the District Court will result in a recommendation of dismissal.

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants'
motions to dismiss be **GRANTED** in part and **DENIED** in part.  Pursuant to the
District Court's order of remand dated March 30, 2009, the following is a "Box
Score," summarizing specifically the recommendations of grant or denial as to
each claim as to each defendant:

**Defendants' Motions to Dismiss RECOMMENDED
GRANTED as to Following Complaint Paragraphs**

| Defendant | Complaint Paragraph(s) |
|---|---|
| Andison | 200, 238, 254, 257, 262, 295 |
| Armstrong | 153, 155, 157, 166, 170, 171, 174, 176, 193, 203, 210, 235, 238, 239, 244, 247, 249, 254, 257, 260, 262, 264, 265, 266, 268, 269, 270, 274, 276, 277, 278, 279, 280, 281, 282, 284, 285, 286, 287, 289, 291, 292, 293, 294, 295, 297, 298, 299, 300, 301, 302, 303, 306, 307, 308, 309, 311, 312, 319, 324, 328, 329, and 331 |
| Bell | 172, 215, 280 |
| Caruso | 179, 186, 205, 223, 224, 305 |
| Doering | 244 |
| Eaton | 244, 249, 254, 280, 294, 295, 297, 298, and 299 |
| Etelamaki (listed as Dostaler) | 300, 302, 307, 235, and 328 |

| Defendant | Complaint Paragraph(s) |
|---|---|
| Evers | 262 and 293 |
| Ezrow | 319, 321 |
| Farley | 175 |
| Faulkenstein | 250, 255, and 297 |
| Gray | 242 |
| Hill | 301, 303, 304, and 331 |
| Hofbauer | 155, 162, 166, 170, 171, 174, 176, 181, 182, 185, 192, 193, 197, 203, 217, 218, 220, 222, 228, and 234 |
| Horton | 301, 303, and 331 |
| Hosely | 209, 210 (in part) |
| Ingram | 247 |
| Jondreau | 264, 265, 266, 268, 269, 270, 272, 274, 275, 276, 277, 279, and 300 |
| Kotila | 301, 303 |
| Krauss | 242 |
| Lalonde | 302, 315 |
| LaPlante | 319, 324, and 329 |
| Luoma | 219, 221, 264, 265, 266, 268, 269, 270, 274, 276, 277, 278, 279, 281, 282, 284, 285, 286, 287, 302, 307, 319, 324, 328, 329, and 330 |
| Marschke | 169 |
| McKee | 210 (in part) |
| Mohrman | 165, 167, 168, 190, 227, 229, and 232 |

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

| Defendant | Complaint Paragraph(s) |
|---|---|
| Monahan | 243, 244, 292 |
| Mullen | 170, 181, 185, 196, 198, 235 |
| Napal | 206 |
| Niedermeyer | 256, 257 |
| Niemisto | 176, 193, 184, 189, 202, 222 |
| Pass | 187, 204, 244, 249, 254, 260, 291, 294, 295, 297, and 298 |
| Perry | 209, 210 (in part) |
| Perttu | 265, 266, 268 |
| Pittsley | 269, 285, 286, 321 |
| Pokely | 203 |
| Schooley | 163 |
| Smith | 281, 282, 285, 286, 287, 300, 307, 323 |
| Sweeney | 269, 270, 272, 275, 279, 285, 286 |
| Travino | 215 |
| Watson | 173, 238, 244, 247, 249, 254, 257, 260, 262, 291, 292, 293, 294, 295, 297, 298, and 299 |
| Webb | 172 and 173 |
| Weisinger | 176, 220 |
| Williams | 241, 247, 262 |
| York | 158, 165, 168, 174, 182, 188, 203, 232, 235 |

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

**Defendants' Motions to Dismiss RECOMMENDED
DENIED as to Following Complaint Paragraphs**

| Plaintiff | Defendant | Paragraph(s) in Complaint |
|---|---|---|
| Proctor | Applegate (ARF) | 214, 216 |
| Petersen | Applegate (ARF) | 257 |
| Chandler | Applegate (ARF) | 295, 299 |
| Petersen | Bell (ARF) | 258, 261 |
| Petersen | Berry (ARF) | 238, 240, 245, 246, 247 |
| Petersen | Burtovoy  (ARF) | 254 |
| Chandler | Butzin (AMF) | 323, 324 |
| Peterson | Caldwell (ARF) | 252 |
| Petersen | Eaton (ARF) | 239 |
| Petersen | Evers  (ARF) | 247 |
| Petersen | Ezrow (AMF) | 265 |
| Chandler | Ezrow (AMF) | 326 |
| Proctor | Farley (LRF) | 166 |
| Petersen | Gibbs (ARF) | 247 |
| Chandler | Gibbs (ARF) | 292 |
| Petersen | Gray (ARF) | 239, 240 |
| Petersen | Hemry (ARF) | 253, 254 |
| Chandler | Hemry (ARF) | 295, 299 |
| Proctor | Hosely (IBC) | 210 (as it relates to retaliatory transfer only) |
| Petersen | Jondreau (AMF) | 263 |

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

| Plaintiff | Defendant | Paragraph(s) in Complaint |
|---|---|---|
| Petersen | Kiser (ARF) | 262 |
| Petersen | Krauss (ARF) | 238, 239, 240, 246 |
| Chandler | Krauss (ARF) | 293 |
| Chandler | Lalonde (AMF) | 300 |
| Proctor | McKee (IBC) | 210 (as it relates to retaliatory transfer only) |
| Proctor | Mohrman (MDOC Lansing) | 156 |
| Petersen | Monahan (ARF) | 239 |
| Chandler | Nannberg (AMF) | 301 |
| Petersen | Niedermeyer (ARF) | 258, 261 |
| Chandler | Olin (ARF) | 295 |
| Petersen | Pass (ARF) | 239 |
| Proctor | Perry (IBC) | 210 (as it relates to the retaliatory transfer claim only) |
| Chandler | Petaja (AMF) | 302 |
| Petersen | Pfeiffer-Lenart (ARF) | 248, 250 |
| Petersen | Pittsley (AMF) | 266, 267 |
| Petersen | Sands (ARF) | 249 |
| Chandler | Sands (ARF) | 294, 295 |
| Proctor | Schooley (MDOC Lansing) | 207 |
| Petersen | Smetka (ARF) | 256, 259 |

| Plaintiff | Defendant | Paragraph(s) in Complaint |
|-----------|-----------|---------------------------|
| Proctor | Stapleton (MDOC Lansing) | 165, 167, 168, 190 |
| Petersen | Stapleton (MDOC Lansing) | 255 |
| Chandler | Weise (AMF) | 310, 314, 318, 320, 322, 331, 333 |
| Proctor | Weisinger (MBP) | 190-191 |
| Petersen | Williams (ARF) | 240, 243, 245, 246, 260 |
| Chandler | Williams (ARF) | 291, 298 |
| Petersen | Wilson (ARF) | 238 |
| Proctor | York (Gormley) (MBP) | 166 |
| Hurd | York (Gormley) (MBP) | 217-218 |

The undersigned also **RECOMMENDS** that the remaining claims be

**SEVERED** as set forth above.  The undersigned further **RECOMMENDS**, in the

interests of judicial efficiency and economy, that, all new cases that may be

opened pursuant to any order issued by the District Court, be assigned to the same

judges as the lead case.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 10 days of service,

as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *Thomas v.*

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines any objections are without merit, it may rule without awaiting the response.

                                                    s/Michael Hluchaniuk
Date: June 19, 2009                          Michael Hluchaniuk
                                                    United States Magistrate Judge

Amended Report and Recommendation
Defendants' Motions to Dismiss and Severance
*Proctor v. Applegate*; 07-12414

## CERTIFICATE OF SERVICE

     I certify that on June 19, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Clifton B. Schneider, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Daniel Chandler, # 250214, BELLAMY CREEK CORRECTIONAL FACILITY, 1727 Blue Water Highway, Ionia, MI 48846, Perry Alva Hurd, Jr., 2581 Park Way Drive, Manitou Beach, MI 49253, Gilbert Jividen, 262914, E.C. BROOKS CORRECTIONAL FACILITY, 2500 S. Sheridan, Muskegon Heights, MI 49444, Jason Petersen, 286036, LAKELAND CORRECTIONAL FACILITY, 141 First Street, Coldwater, MI 49036, and Fred Proctor, 178602, LAKELAND CORRECTIONAL FACILITY, 141 First Street, Coldwater, MI 49036.

                       s/James P. Peltier
                       Courtroom Deputy Clerk
                       U.S. District Court
                       600 Church Street
                       Flint, MI 48502
                       (810) 341-7850
                       pete_peltier@mied.uscourts.gov